# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| Yaodi Hu | ) | |
| plaintiff | ) | **Jury** demand |
| v. | ) | |
| Village of Maywood | ) | Judge Dow Magistrate Key |
| Robinson Towing | ) | 07 cv 7203 |

# First Amended Complaint

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to

    a) The Civil Rights Act of 1871, 42 U.S.C.§ 1983

    b) 28 U.S.C. § 1331 Federal Question

    c) 28 U.S.C. § 1343 Civil rights and elective franchise

    d) The Sherman Act 15 U.S.C. § 4

    e) Fair Housing Act 42 U.S.C. § 3613

    f) 28 U.S.C. § 1367 Supplemental Jurisdiction

    g) Federal Declaratory Judgment Act 28 U.S.C. § 2201 and § 2202

## Parties:

2. Yaodi Hu is the property owner located at 1115 S. 5th Ave. Maywood IL 60153
3. Robinson Towing is a towing company located at 1321 s. 4th Ave. Maywood IL 60153
4. Village of Maywood is a municipal or governmental entity located at 40 w. Madison st. Maywood IL 60153.

## Venue

5. Venue is proper is this District pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to the claim arose in this district

## Statement of Fact Regarding Zoning

6. Hu bought the property located at 1115 S. 5th Ave Maywood IL 60153 around October 2004. Before plaintiff Hu finalized his purchase of 1115 S. 5th Ave. Maywood IL 60153, Hu visited Village several times discussing the possibility of procuring license conducting his business.
7. Hu was assured by the Village, represented by Brian Sim's staff that at least Hu can get business license to do business as home based business under Village's then Ordinance.
8. During the numerous discussions with Village, plaintiff Hu brought up issues of business signs. The Village stated that any type of sign was prohibited as home based business, while plaintiff Hu maintained that it could be a violation of First Amendment.
9. After Hu finalizing his purchase of the property at 1115 S. 5th ave. Maywood, IL 60145, Hu started his long and never completed journey of trying to obtain business license.
10. First, Hu attempted to apply for zoning variance allowing that residentially zoned property to be used as a business office, maintaining its prior several decades non-conforming use. Village insisted that Hu need to apply twice and pay for two application fee for his application of zoning variance. Hu refused to pay twice for one hearing and one publication. In the end, Hu did not pay the application. The Village did not inform Hu that the hearing occurred any way and Hu did not appear to present his case because the Village fail to inform Hu that the hearing took place.
11. Then Hu attempted to apply for home based business license. Hu applied for home based business for his insurance business and mortgage brokerage business.
12. The Village insisted that all Hu's piano had to be removed from the premises before it will consider Hu's application. Hu insisted that if approval is conditioned upon the removal of his pianos, he would consider that. The Village knew that moving those pianos are quite expensive. Hu also insisted that he can erected wall to separate his piano storage from his office space of insurance. In any event, Village never seriously considered Hu's application in any practical way.
13. Plaintiff Hu visited the Village many times regarding the issue of getting business license. At one point, the Village represented to Hu that the entire block of 5th Avenue would be zoned as commercial so Hu's problem would just go away. At another point, the Village

encouraged Hu applying for zoning variance. And at another point, the Village suggested applying for zoning change.

14. For all practically purposes, the Village did not like the idea of having another insurance agency in the Village of Maywood. Not only there are about three insurance agencies on the block of 5th Avenue, but also prior high level Village official owns insurance brokerage business. Hu's business, as Farmers Insurance Agency would obviously compete with all of them.
15. Hu applied home based business license to the Village. No formal response was ever rendered by the Village. Hu's counsel John Knopic sent a letter May 31, 2006 inquiring the status of Hu's applications and there was no response from the Village.
16. The Village essentially was doing its best running Hu around so he would not ever be able to get his insurance business started in Maywood.
17. Eventually, Hu submitted his zoning variance application and a hearing was originally scheduled for June 27, 2006. For some inexplicable reasons, without further public notice, the public hearing was rescheduled to July 11, 2006. Hu had an extraordinarily hard time in getting the actual notice of changed hearing date.
18. At the hearing, board member explicitly stated that Hu's intention was not clear regarding his zoning variance application. The board insisted that it had no legal power to grant variance. It indicated that insurance business was not welcome, because there are other insurance business on the same block, and only piano business of Hu's would be welcome.
19. After Hu's zoning application was denied by the board, Hu was seeking appeal of the board decision. Hu was told that the transcript of the hearing was not available, because the audio tape was not audible.
20. After Hu's indication of appeal of board hearing, Hu's property basement was flooded with several feet of water. Hu tried to pump them out to the street and it was unsuccessful, and all the water went right back to the basement. Upon information and belief, the Village some how intentionally sabotage the sewage system linking to Hu's property, causing serious flooding. The flooding condition still continues. To this date, Hu could not use his commercial space of the property.

## Statement of Facts Regarding Towing

21. In Robinson Towing's Exhibit 1, "Pre-Tow Vehicle Notice", it states that the tow is authorized by Chapter 99.02 of the M.C.O. which provides that any abandoned and /or inoperative vehicle may be towed.

22. In the Village's Ordinance, the following 6 conditions are considered **ABANDONED VEHICLE :**

(1) A vehicle parked that has been unmoved for a period of at least 24 hours and from its condition, the period during which it has not been moved, or some other circumstance appears to have been abandoned by its owner, or

(2) A vehicle parked in a public parking lot or on private property without the consent of the lot owner, proprietor or agent of the property, which person has requested that the vehicle be towed; or

(3) A vehicle defined as abandoned, or capable of being towed by any other ordinances of the municipality, and which does not fall into the categories of "hazardous" or "unlawful" vehicles, and therefore is not subject to an immediate tow; or

(4) A vehicle that has been reported stolen;

(5) A vehicle that is parked in a location where the parking of the vehicle is not allowed under the provisions of any applicable law, statute, ordinance, rule or regulation; or

(6) A "trailer," as defined by 625 ILCS 5/1-209, that is not attached to or drawn by a "motor vehicle," as defined by 625 ILCS 5/1-146, or not attached to or drawn by a "truck," as defined by 625 ILCS 5/1-211.

23. The Towing Notice purported to be sent to Hu essentially alleged that Hu's vehicles were abandoned. Because of Hu's application for business license and zoning variance, and because of water bill registration and other registration, the Village has all the information regarding plaintiff Hu. The Village has Hu's cell phone number and called Hu several times regarding different issues.

24. The Village has Hu's address at 3258 S. Paulina Chicago IL 60609. The Village has Hu's business address at 219 W. Cermak Chicago IL 60616. The Village has Hu's business number at (312) 808 8899. The Village has Hu's cell phone number of 773 216 3173.

25. In their Motion to Dismiss, The Village claimed that they sent certified mail to 1115 s. 5th Ave. Maywood IL 60153. The Village knew that Hu was not residing there because of the flooding and the water was shut off for a period of time.
26. Village of Maywood and Robinson Towing towed away two of plaintiff's vehicles on Nov. 30, 2007. Those two vehicles parked upon his private property in last three or more years without incidents. One of them is valued at about $5,000 and the other is valued at about $15,000 plus $20,000 merchandise in it.
27. Plaintiff had several discussions with the head of Code Enforcement Department of the Village of Maywood regarding his parking of commercial vehicle in residential area. Plaintiff Hu maintained several times that either the Ordinance prohibiting the parking of commercial vehicles on private residential property is unconstitutional on its face, or the enforcement of that ordinance against Hu would be unconstitutional as applied. Hu expressed that he would challenge the validity of the Ordinance on statutory or constitutional ground.
28. One of plaintiff's vehicle parked on private property of his neighbor. Hu is supposed to have easement on his neighbor's property so his vehicle can drive out to street. Therefore, it is not quite clear if Hu has legal right to park his vehicle there. Plaintiff Hu had many friendly encountering with his neighbor where his vehicle was parked. His neighbor never raised objection to the parking of Hu's vehicle. In any event, There is implicit consent on the part of his neighbor in terms of parking of Hu's one vehicle. Village has cited no authority in supporting its standing challenging Hu's parking of his vehicle in his neighbor's private property.
29. Plaintiff Hu received certified mail sent to his address at 3258 S. Paulina Chicago IL 60609 by Robinson towing on December 21, 2007 and Hu filed the action the same day.

## Count I. Violation of 42 U.S.C. § 1981

30. Hu is an Asian. According U.S. 2000 Census, in Village of Maywood, more than 80% of population are African American, about 10% white and 10% Hispanic.
31. The government of Village of Maywood was dominated by African American. Hu as Chinese, a minority of the minority has been consistently discriminated against because

of his race by the Village of Maywood. Hu is not an African American and has no connection with the local community with any voting clout.

32. When the Village tried to charge twice the application fee for Hu's first petition of zoning variance, Hu was discriminated based upon his race. From his application for business license, to the issues of vehicle parking, numerous citations to his properties, and flooding his basement, all reflected Village's discrimination against Hu and its intent preventing Hu from getting the license doing business in Maywood.

33. The Village has its custom and policy of intentionally excluding non-African American from entering Maywood market competing with the business owned by its long time residents. Plaintiff pray for punitive damages, compensatory damages and injunctive relief under the law.

## Count II. Violation of Procedural Due Process of 14th Amendment

34. When the first petition of zoning variance was held, the Village intentionally failed to inform Hu the proceeding violating Hu's due process right under Fourteenth Amendment.

35. In Hu's Second Petition for zoning variance, the hearing was inexplicably rescheduled and Plaintiff Hu had an extraordinary difficult time in procuring the new date and time for the hearing. After repeated and persistent effort by plaintiff then Counsel John Knopic and Hu, Hu eventually got the hearing date and time.

36. The Village further intentionally failed to provide the audio tape or transcript of the zoning petition hearing. The Village refused to provide the necessary transcript so Hu can not appeal Village's zoning board's decision of denying Hu's petition of zoning variance. The Village intentionally deprived Hu's due process right under the 14th Amendment by preventing him from appealing.

37. Due process does not require that a property owner receive actual notice before the government may take his property. ***Dusenbery v. United States***, 534 U.S. 161, 170 (2002). "Rather, we have stated that due process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to represent their objections.' Mullane, 339 U.S.., at 314." ***Jones v. Flowers*** , no. 04-1477 (S.Ct. 4/26/2006)(S.Ct.2006).

38. The Village contended that it provided proper notice to Hu when it towed Hu's vehicles. The Village Ordinance § 99.03 defined the "Pre-tow notice for abandoned and inoperable vehicles." The Ordinance states: (A) Notice pursuant to this section shall be personally delivered to the owner of a vehicle that appears to be abandoned or inoperable or shall be forwarded by certified or registered mail, return receipt requested, to the address of the owner of the vehicle as indicated in the most current registration list of the Secretary of State." The Ordinance further states: " In no case will the Village be required to delay towing more than 5 days after personal delivery of the notice or 7 days after the date of the mailing of the notice in instances where no personal delivery has occurred, if no request for a hearing has been received within that 5 or 7 day period." The reading of this provision indicates that the Ordinance mandates towing after the sending of certified mail perfunctory regardless of the changing circumstances such as a known moving, a known new address or a known method under circumstances which would have the notice reach the intended recipient.
39. This type of notice and Ordinance of Village of Maywood is obviously unconstitutional. Essentially, every vehicle parked on private driveway could be tow if the owner happen to take a vacation of longer than 7 days. The notice provision of the Ordinance § 99.03 is so inflexible to allow "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to represent their objections" under ***Mullane***.
40. This type of Notice mandated by Village Code 99.03 is unconstitutional on its face under ***Jones v. Flowers*** , no. 04-1477 (S.Ct. 4/26/2006)(S.Ct.2006) and ***Mullane v. Central Hanover Bank Trust Co.*** 339 U.S. 306 (1950). "The notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner." ***Graff v. Nicholl,*** 370 F.Supp. 974, 981 (N.D. Ill. 1974). By sending certified mail to an address where Hu no longer resided, Village intended not to give notice and opportunity to be heard in a meaningful time and in a meaningful manner.
41. Under § 99.01 of the Village Code, first category of **"ABANDONED VEHICLE"** is (1) A vehicle parked that has been unmoved for a period of at least 24 hours and from its condition, the period during which it has not been moved, or some other circumstance appears to have been abandoned by its owner.

42. Hu's vehicles were towed as abandoned, see exhibit 1 and exhibit 3 of Motion to Dismiss by Robinson Towing.
43. To declare a vehicle unmoved for 24 hours as abandoned is totally irrational and capricious. § 99.01 **Abandoned Vehicle** (1) is also purposefully vague without specifying where the vehicle can be declared abandoned. On private land for 24 hours? Or public land? That gives the Village a total unbridled discretional power to tow whatever vehicle they want to tow.
44. This part of Ordinance is unconstitutionally vague " that men of common intelligence must necessarily guess at its meaning and differ as to its application." See ***Connally v. General Const. Co***. 269 U.S. 385, 391. (1926). The Ordinance is unconstitutionally invalid "under the Due Process Clause because of vagueness and absence of any standards sufficient to enable defendants to protect themselves against arbitrary and discriminatory impositions of costs." See ***Giaccio v. State of Pennsylvania*** 382 U.S. 399, 402, (1966).
45. The Village intentionally sent its notice to 1115 S. 5th Ave knowing that no one was residing there. Village intentionally seize his vehicles without Hu's knowledge so Hu can not contest in a timely manner and the Village and its connected business can profit according to "law" by "junking" Hu's vehicle.
46. To get Hu's other vehicle back, Hu needed to pay nearly $4,000. It is essentially a criminal enterprise. They tow Hu's vehicle under the color of law, dispose one of the vehicle for their personal benefit, then charge Hu for $4,000 right before Christmas when they needed money badly. They intentionally send the notice to the address where Hu would not receive, so they can tow Hu's vehicle and dispose Hu's vehicle without opposition and they can profit from towing and storage and other fees they are going to charge. But when they wanted to get nearly $4,000 cash from Hu, Robinson Towing sent the notice to a place where Hu will receive: Hu residence at 3258 S. Paulina Chicago IL 60609. Had they sent the pre-tow notice to Hu's address at 3258 S. Paulina Chicago IL, Hu probably would have received the notice timely and contest it immediately, thwarting their effort of converting Hu's property to their personal use by "junking it".
47. Robinson Towing' counsel admitted in open court that one of Hu's vehicle was 'junked'. Defendant Robinson Towing has a big parking lot. There is no reason to junk Hu's

vehicle. It is simply not credible. One plausible conclusion is that they disposed the vehicle so they can use the engine of the vehicle or other parts of the vehicle.

## Count III. Violation of Equal Protection Clause of 14th Amendment

48. "This circuit has recognized at least three ways in which a plaintiff may successfully allege a violation of equal protection rights: (1) plaintiff was singled out for unequal treatment because of her membership in a vulnerable group (based on race, gender, etc.); (2) plaintiff was subjected to law or policies that make irrational distinctions; or (3) plaintiff endured an "orchestrated campaign of official harassment directed against (her) out of sheer malice." ***Esmail v. Macrane***, 53 F.3d 176, 178 (7th Cir. 1995). See also ***Union Pacific Railroad Company v. the Village of South Barrington*** 958 F.Supp. 1285 (N.D. IL 1997)
49. In Hu's case, all three instances existed. Hu is racial minority and he was singled out to have his vehicle towed to benefit a few.
50. Hu as minority business was also treated unequally in his application of home based business license, and in the two petition hearing of his zoning variance hearing.
51. Kenneth Smith as Village's employee of code enforcement and the head of the code enforcement department orchestrated unequal treatment to Hu because of his race. Numerous citation were unequally issued to Hu because of his race and affiliation.
52. The Village's Ordinance of parking "commercial" vehicle on residential property as being illegal is irrational. Drawing a line at 24 hours and declaring a vehicle unmoved for 24 hours as abandoned is totally irrational. The phrase "commercial vehicle" is also quite vague and subject to arbitrary and unequal enforcement.
53. Village's towing of Hu's two vehicles are prime example of third category of equal protection violation. The Village orchestrated the deprivation Hu's property to benefit a few who are connected to the Village.
54. Plaintiff Hu hereby also challenge the Village's unequal enforcement of the Ordinance against Hu violation the equal protection clause of the Fourteenth Amendment.
55. Village's Code § 99.01 **Abandoned Vehicle** (1) also violated equal protection clause of Fourteenth Amendment. The Code divides vehicles into two classes, those unmoved for at least 24 hours and those unmoved for less than 24 hours. The standard of review of this

Ordinance is more than That classification is irrational violating the equal protection clause of 14th Amendment.

## Count IV. Violation of Hu Right under First Amendment

56. Not being an insider of Maywood politics, and not knowing that former Mayor of Maywood was on his way out because of his lack of popularity, Hu attended one fund raising party by former Mayor of Maywood Conner in his 2005 campaign. Right after that, the Code Enforcement Department of Village visited Hu's place and issued citations to Hu for having the door open, when Hu's 10 years old daughter was practicing piano, having the door open to get some ventilation. Ever since that, there was no shortage of citations from the Village.
57. One of the motivating factors that Village issued citations to Hu is his association with former mayor Conner. One of the motivating factors that Village denied Hu business license and zoning variance is his association with Conner.
58. This is violation of First Amendment of U.S. Constitution. See ***Nestor Colon Medina & Sucesores Inc. v. Custodio*** 964 F.2d 32 (C.A. 1 (Puerto Rico), 1991).

## Count V. Common Law Conversion and Unjust Enrichment

59. "Conversion is an unauthorized assumption of the right to possession or ownership of personal property. Jensen v. Chicago & Western Indiana R.R. Co., 94 Ill.App.3d 915, 419 N.E.2d 578, 593 (1981). To prove a claim of conversion, the plaintiff must show (1) a right in the property, (2) a right to the immediate possession of the property, which is absolute, unconditional, and not dependent upon the performance of some act, (3) a deprivation of the right by the unauthorized and wrongful assumption of control, dominion, or ownership by the defendant, and (4) a demand for possession of the property. Pavilon v. Kaferly, 204 Ill.app.3d 235, 247, 561 N.E.2d 1245, 1253 (1990)" ***Fortech, L.L.C. v. R.W. Dunteman Company, Inc***. No. 1-05-1526 (Ill.App. 6/30/2006)(Ill.App.2006).
60. December 21, 2007, plaintiff demanded the possession of his two vehicles. Hu was told by Robinson that one of them was already disposed of. Hu owns those two vehicles, has a right to the immediate possession of the property. The junking of the vehicle by Robinson

is wrongful and inexplicable. Robinson and the Village converted Hu's property for their personal benefit.

61. A plaintiff may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiff's detriment, and defendant's retention of the benefit violates the fundamental principles of justice. ***Stathis v. Geldermann***, 295 Ill.App.3d 844, 864, 692 N.E.2d 798 (1998). Hu's vehicle was in good shape and the engine was quite good. Defendant Robinson retained Hu's vehicle with the pretext of being "junked." It is no credible. From the date of notice November 19, 2007, the vehicle was supposedly being towed November 27, 2007. Plaintiff made the inquiry on December 21 2007 and the vehicle was allegedly disposed of. There is certainly no reason to junk the vehicle. Robinson enriched itself by "junking" Hu's vehicle which is not quite credible.

## Count VI Violation of Fair Housing Act 42 U.S.C. § 3617

62. 42 U.S.C. § 3617 states: " It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encourage any other person in the exercise or enjoyment of any right granted or protected by section 803, 804, 805, 806 [42 U.S.C.§§ 3603, 3604, 3605, or 3606].

63. Plaintiff Hu planned to have his 1115 s. 5th ave to be his home and move his entire family to live there after his opening of the insurance business. Because of Hu's inability of opening up his business there, Hu did not move his family there.

64. The Village's denial of Hu's home based business license proximately caused Hu being unable to use his property at 1115 S. 5th Ave. as his primary residence.

65. Village's denial of Hu's business license is a violation of 42 U.S.C. § 3617, interfering with Hu's enjoyment of his potential residence. Village's damaging of Hu sewage causing this continued flood also violated 42 U.S.C. § 3617.

66. Plaintiff did live in Maywood for a period of time. Defendant Village's action had the effect of driving Hu out of Maywood violating 42 U.S..C. § 3617. See ***Seaphus v. Lilly*** 691 F.Supp.127 (1988).

## Count VII Violation of Substantive Due Process of 14th Amendment

67. The enforcement of Ordinance by the Village in towing Hu's vehicle was arbitrary and irrational. The denial of Hu's application of home based business license was also arbitrary and irrational.
68. Hu alleged three other independent constitutional violations, a) Hu's First Amendment right of free association, b) equal protection violation and c) Fifth amendment taking without just compensation.
69. Where the exercise of government authority involves law enforcement officials, the Supreme Court has stated that a plaintiff's substantive due process rights are violated where the alleged abuse of government power "shocks the conscience." ***Rochin v. California,*** 342 U.S. 165, 172 (1952). See also ***Belcher v. Norton*** at 753.
70. The towing of Hu's vehicles involves law enforcement of officials. In ***Belcher v. Norton***, a Deputy Marshall coerced an owner of vehicle signing over the title of the vehicle to a towing company. Our seventh Circuit in this 2007 case, reversed the summary judgment of the lower court, considering Deputy Marshal's actions, "as characterized by the plaintiffs, shock the conscience, as that term is employed in modern substantive due process analysis." ***Belcher v. Norton*** at 753.
71. If the incidents in ***Belcher v. Norton*** shock the conscience, our instant case is even more shocking. Hu's vehicle essentially disappeared on this planet without due process of law. Defendants Village and Robinson Towing deliberately and intentionally deprived both procedural (by sending notice to place where Hu was no longer residing) and substantive due process right of Hu in the cloak of enforcing its ordinance. The end result: nearly $4,000 needs to be paid to Robinson Towing to get back Hu's another vehicle, while the other vehicle was admittedly being "junked". Considering the value potentially of thousands, both defendants essentially were engaging in concert a criminal enterprise of profiteering in the name of enforcing law. The situations here are far more shocking than the situation ***Belcher v. Norton***
72. Hu has property interest in the continued productive use of his property. The Village did not formally respond to Hu's application for home based business license, for several years. Hu tried in vain and the Village constantly shifted its position regarding Hu's potential business license or commercial use. All these together shock the conscience.

The Village violated Hu's substantive due process right under the Fourteenth Amendment. See ***Desi's Pizza, Inc., v. City of Wilkes-Barre*** 321 F.3d 411 426, (3rd Cir. 2003).

## Count VIII Common Law Fraud under the Illinois State Law

73. "A claim of fraudulent misrepresentation under Illinois law requires: (1) a "false statement of material fact; (2) known or believe to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement," where the party has a right to rely on the statement; and (5) "damage to the other party resulting from such reliance." Soules v. General Motors Corp., 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E. 2d 599 (1980). See also ***Union Pacific Railroad Company v. the Village of South Barrington*** 958 F.Supp. 1285 (N.D. IL 1997).
74. Before Hu purchased the property, the Village falsely promised Hu that home based business license would be granted, knowing full well that the Village would not grant that license considering Hu's insurance brokerage business as unacceptable to the Village because it will hurt some established brokerage business in Maywood.
75. Village of Maywood falsely induced Hu in apply Home based business license knowing welling that the Village had no intention of considering it. Hu waited and relied upon Village's decision more than two years. It caused Hu damages because Hu was unable to open his business for several years in Maywood and Hu's property was largely unproductive.

## IX. Violation of Fifth Amendment of Taking without Compensation

76. Hu is alleging temporary regulatory taking by the Village of Maywood through denying his license and zoning variance. Hu's claim for "just compensation" as a result of a temporary taking is based on ***First English Evangelical Lutheran Church v. County of Los Angeles*** (1987), 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250. see also ***City of Monterey v. Del Monte dunes at Monterey*** 526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed. 2d 882 (1999).
77. The first floor of 1115 s. 5th Ave. Maywood IL 60153 was initially built for commercial use. The property was originally a two story residential property. About several decades ago, then property owner built out an first floor addition to the front and back and side of

the property with an additional 2500 square feet of the first floor being added. That addition was commercial and the property remained to be used as commercial use ever since it was built until plaintiff Hu acquired the property. The added portion of the property was not suitable for residential use because it was not built that way.

78. Hu purchased the property mainly because of its commercial space and relied upon Village's promise that at least a home based business license would be issued.
79. Because of lack of action of the Village regarding Hu's home based business license (village never formally responded to Hu's application for several years) and because of formal denial of zoning variance, all viable use of the property was denied by the Village and it is temporary regulatory taking.

## X. Violation of Taking without Just Compensation under Art. I § 15 of Illinois Constitution

80. Art. I § 15 of Illinois Constitution states: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law."
81. The Supreme Court Illinois ruled in ***Rigney v. City of Chicago*** 102 Ill.64, that "damaged meant any direct physical disturbance of a right, either public or private, which an owner enjoys in connection with his property; a right which gives the property an additional value; a right which is disturbed in a way that inflicts a special damage with respect to the property in excess of that sustained by the public generally." See Citizens Utilities Company of Illinois v. the Metropolitan sanitary District of Greater Chicago, 322 N.E.2d 857, 61 25 Ill.App.3d 252, (1st Dist. 1974).
82. The only economically viable use of the added first floor of the subject property is commercial. Hu's right to use was damaged by the Village through its denial of Home base business license and through its capricious and irrational denial of his application of zoning variance.
83. The junking of Hu's another vehicle is "taken" or "damaged" under the Art. I § 15 of Illinois Constitution by both the Village of Maywood and Robinson Towing. It is without just compensation.

## XI. Village's Ordinance Chapter 99: "Towing of Vehicle" is Unconstitutional on its Face Violating Substantive Due Process of Law

84. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause has a substantive component. See. E.g., ***Planned Parenthood of S.E. Pennsylvania v. Casey***, 505 U.S. 833, 846-47 (1992)

85. "In addition to its solid historical foundation, the tremendous practical significance of a right to localized travel also strongly suggests that such a right is secured by substantive due process." ***John v. City of Cincinnati*** 310 F.3d 484, 498 (6th Cir, 2002). Towing of Hu's vehicles impinged upon his fundamental right to travel.

86. Essentially, City's towing of Hu's vehicles violated his substantive due process right in that there is no compelling governmental interest in declaring Hu' vehicles abandoned by the Village and towing it from the private land. Not only there lack compelling governmental interests, but also the towing is not narrowly tailored to further whatever the governmental interests the Village has.

## XII Violation of Sherman Act in Preventing Hu from Operating His Insurance Brokerage in Maywood

87. 15 U.S.C. § 1 states the following: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

88. Insurance brokerage business affects interstate commerce. There are at least two insurance brokerage business on the block of 5th Avenue. The Village has many important constituents engage in insurance brokerage business.

89. The Village intentionally delayed, denied Hu's application of home based business license for his insurance brokerage business for the purpose of protecting its constituents from new competition.

90. In the zoning variance petition hearing, one board member explicitly expressed that he did not think the zoning variance bringing in more insurance brokerage would benefit the

community. There would be too much insurance competition on 5th Avenue. Led by him, the board rejected Hu's petition.

91. The board rejected Hu's petition based upon its pretext that it did not have the power to grant variance. From hindsight, the Village acted consistently to discourage Hu from opening up his insurance brokerage business. It is the custom and policy of the Village to prevent new competition from entering Village of Maywood. The Village violated Sherman Act restraining trade.

## XIII. Violation of Illinois Anti-Trust Act

92. **The Illinois Antitrust Act** states the followings: 740 ILCS 10/3 Sec.3. "Every person shall be deemed to have committed a violation of this Act who shall:

    (1) Make any contract with, or engage in any combination or conspiracy with, any other person who is, or but for a prior agreement would be, a competitor of such person:

    a. "for the purpose or with the effect of fixing, controlling, or maintaining the price or rate charged for any commodity sold or bought by the parties thereto, or the fee charged or paid for any service performed or received by the parties thereto"

    b. fixing, controlling, maintaining, limiting, or discontinuing the production, manufacture, mining, sale or supply of any commodity, or the sale or supply of any service, for the purpose or with the effect stated in paragraph a. of subsection (1);

    c. allocating or dividing customers, territories, supplies, sales, or markets, functional or geographical, for any commodity or service; or

    (2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce; or

93. The Village's action of protecting its constituents' insurance brokerage business by preventing new competitor entering the market violated Illinois Anti-Trust Act.

## XIV. Ordinance § 99.01, § 99.03 Violated Art. I § 2 Illinois Constitution

94. Illinois Constitution Art. I § 2 states the following: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

**95.** Village's § 99.01 **Abandoned Vehicle** (1) is unconstitutionally vague under Article I. § 2 of Illinois Constitution. See ***Parks v. Libby-Owens-Ford Glass Co***., 360 Ill.130, 195 N.E. 616 (1935). (Statutes which either forbid or require the doing of an act in terms so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application do not constitute due process of law.)

**96.** Village's § 99.03 notice provision violated due process defined under Illinois Constitution Article I. § 2. see ***Redwood v. Lierman***, 772 N.E.2d 803, 331 Ill.App.3d 1073, 265 Ill.Dec. 432.

## XV. Village and Robinson's Towing of Hu's Vehicles are Unreasonable Seizure under the Illinois Constitution Article I. § 6

**97.** Illinois Constitution Article I § 6 states: " The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means."

**98.** "Both the federal Constitution and the State Constitution prohibit unreasonable searches and seizures; this protection applies to commercial premises as well as private homes" ***People v. Rivera***, 233 Ill.App.3d 69, 174 Ill.Dec. 226, 598 N.E.2d 423 (2 Dist. 1992). "The fourth amendment's protection against unreasonable searches and seizures fully 'applies in the civil context.'" ***Soldal v. Cook County,*** 506 U.S. 56, 61, 113 S.Ct. 538, 543, 121 L.Ed.2d 450, 458 (1992).

**99.** Except for a 'few specifically established and well-delineated exceptions,' 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment.' ***Katz v. United States***, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed. 2d 576, 585 (1967). The same rule applies to seizures. ***United States v. Place***, at 701.

**100.** Therefore, Village's § 99.01, 99.02 and 99.03 Ordinance authorizing the towing of vehicles parked upon private property are facially unconstitutional violating Illinois

Constitution Art. I § 6 as unreasonable seizure. The Ordinances are also unconstitutional as applied to Hu's vehicles. The seizure of Hu's two vehicles without warrant by Village of Maywood and Robinson Towing is unconstitutionally unreasonable.

## XVI. Village and Robinson's Towing of Hu's Vehicles are Unreasonable Seizure Violating Fourth Amendment of U. S. Constitution

**101.** The towing is a direct result of Village's unconstitutional policy and Ordinance.

**102.** The Fourth Amendment of U.S. Constitution states the following: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**103.** The towing of Hu's vehicles from private property by the Village and Robinson are unreasonable seizures under the Fourth Amendment of U.S. Constitution. See ***Soldal v. Cook County Illinois*** 506 U.S. 56 (1992). "Our cases unmistakably hold that the Amendment protects property as well as privacy." ***Id***.

**104.** In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." ***United States v. Place***, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110, 116-17 (1983); ***Camara v. Municipal Court***, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 1730-31, 18 L.Ed.2d 930, 935 (1967) Even if a public official enters a private building with the intention of abating a nuisance, the official ordinarily must have a warrant. ***Michigan v. Tyler***, 436 U.S. 499, 504-05, 98 S.Ct. 1942, 1947, 56 L.Ed.2d 486, 495 (1978).

## XVII. Violation of 42 U.S.C. § 1982

**105.** Hu is ethnic minority. The citations to the property and the lien filed against the property, the flooding of the basement, the denial of home based business license, the denial of zoning variance are all violative of 42 U.S.C.§ 1982 in terms of holding his real

property at 1115 S. 5th Ave. Maywood, IL 60153. Because Village's irrational denial of Hu's zoning variance petition, Hu can not possibly lease his property out.

**106.** Hu's right under 42 U.S.C.§ 1982 was violated. See ***Fakorzi v. Dillard's Inc***. 252 F.Supp. 2d 819 (SD Iowa, 2003) (Reasonable factfinder could have concluded that corporation's proffered legitimate reasons for detaining shoppers for declined check were pretextual, and that corporations actions were motivated by racial prejudice.)

## XVIII. The Village and Robinson Violated 42 U.S.C. § 1985

**107.** Robinson Towing and the Village of Maywood conspired to deprive Hu's Constitutional right of due process because of his race. Both defendants intended to deprive Hu's right.

**108.** The Village has its custom of treating non-African American residents differently because of their race. The Code enforcement of Village acted upon that custom or policy.

**109.** On the one hand, both Village and Robinson knew of all the addresses and phone number of Hu's. When they wanted to tow away Hu's vehicles, they intentionally sent the notice to 1115 s. 5th Ave. Maywood, so Hu would not receive it. When they want to make about $4,000 fee of towing and storage and so on, they sent the notice to 3258 s. paulina Chicago IL 60609.

**110.** Also the Village and Robinson conspired to junk Hu's vehicle for their own person benefit, violating Hu's right under due process of law.

## Prayer of Relief:

111. Plaintiff Hu is claiming triple damages under Sherman Act.

112. Plaintiff is claiming loss of use of the property of its reasonable rent because of temporary regulatory taking.

113. Plaintiff pray this Court enjoin the Village from flooding Hu's basement.

114. Plaintiff is seeking declaratory judgment that § 99.01 Abandoned Vehicle (1) is unconstitutionally vague on its fact,

115. Plaintiff is seeking declaratory judgment that § 99.03(A) Pre-Tow Notice is unconstitutional violating the due process clause of Fourteenth Amendment under ***Jones v. Flowers***. Plaintiff is seeking permanent injunctive relief.

116. Plaintiff is seeking punitive damages against the Village for its egregious conduct.

117. Plaintiff is seeking monetary damages against Robinson Towing for junking Hu's Vehicle. Hu is seeking punitive damages against Robinson Towing.

Yaodi Hu 219 w. Cermak Chicago IL 60616 773 216 3173

Signature: Yaodi Hu